PeaesoN, J.
 

 Prior to the year 1803, William Mills was in possession of the land in question, claiming under Spruce McKay : in that year, Mills executed-a deed to David Myers,his son-in-law, conveying the land to him in fee simple, in consideration of
 
 five shillings
 
 and
 
 love and affection for his. daughter Phalby, wife of the said Myers.
 
 Myers held possession until his death in 1835 : his will contains- this clause: “ I give to my wife Phalby, twenty negroes, a carriage and pair of horses, and
 
 I gime and restore to her, all the property of every description to which I have become entitled by our marriage : ■ and all and every part of the foregoing bequest, I give to my wife in lieu of dower.”
 

 The will contains bequests and devises of negroes, land, &c., to his. several children and grand-children, but makes no express disposition of the land in controversy, unless it be embraced in the above recited clause : The widow took possession of the land and held it until 1849, when she conveyed to the lessors of the plaintiff.
 

 His Plonor was of. opinion, that the above recited clause embraced the land in controversy. Por this the defendant excepts. We concur with his Honor. The words “by our marriage,” taken by themselves in their ordinary sense, would seem to be synonymous with “ in consequence of,” “ by reason of,” “on account of” our marriage. The land in controversy, was conveyed to Myers in consequence, or on account of his marriage. That is clear: for the deed sets out as its consideration, the fact, that his wife is the daughter of the donor, and the consideration of five shillings, is a mere nominal one, for the purpose of raising a use, so as to give effect to the deed as a “ bargain and sale.”
 

 But the words do not stand aloné, and the inference, that
 
 *372
 
 they were intended to have a broad and liberal meaning, is confirmed by the connection in which they are used, and by these facts : If the land is not embraced, the will makes no express disposition of it — it is left to fall into the residuary clause, the office of which, usually is, to convey small or contingent matters that may have been overlooked, and not to pass large and valuable tracts of land : this provision for the wife is ex-' pressed to be in lieu of dower : there is no proof that the testator became entitled to any property whatever
 
 jwre mariti
 
 or by marriage; taking the words in the narrow and restricted meaning contended for by defendant’s counsel, this does not conform to or chime in with the words, “
 
 all the -property of every description,”
 
 or with the idea of giving all and every part as a compensation for the wife’s dower.
 

 ■ The defendant objected to the introduction of the copy of the supposed will, on the ground that its execution was not proved; 1st. Because there is no sufficient evidence that the will, and the affidavits taken by the ordinary in South Carolina, were exhibited to the County Court of Henderson, allowed and ordered to be recorded. 2nd. James S. Guinyard, before whom a person, whose name is set out as one of the subscribing witnesses to the said will, personally appeared, and made the affidavit which he certifies, and before whom two persons, whose names are set out as subscribing witnesses to the codicil, personally appeared and made the affidavit which he certifies, did not (supposing him to have jurisdiction and his identity to be established) judicially pass upon, decide, or declare the fact to be, that the paper writing was duly proved by the affidavits aforesaid so as to be the will of David Myers. 3rd. As a-devise of land, situate in this State, its due execution according- to the laws of this State, must be proved by the oaths of the witnesses taken before the proper court in this State, and cannot be established by affidavits taken before an ordinary in South Carolina.
 

 Each one of these 'grounds supports the objection to the evidence: 1st. The Clerk of Henderson County Court certifies “ that the foregoing will and certificate is duly recorded
 
 *373
 
 in compliance to an order of court, made at said court, whicli is on the minutes of September term, 1854.” The fact that the will and affidavits were “exhibited, allowed, and ordered to be recorded ” by the County Court of Henderson, can only be proved by an exemplification or certified copy of the record; the recital, or reference made to the minute docket as containing an order that the will be recorded, is manifestly not proper evidence in regard to the matters necessary to be proved.
 

 2nd. In 1835, Guinyard takes the affidavit of certain individuals whose names are set out as subscribing witnesses. In 1849, he certifies, under his hand and seal of office, as ordinary, that a paper writing is “ a true copy of the original will now on file in my office.” There does not appear to have been any judicial proceeding before him in regard to the will.
 

 3rd. The question is as to the mode of proving the execution of a devise of land situate in this State, by an inhabitant of another State, which devise is contained in a will that has been admitted to probate in the courts of the domicil.
 

 There is a marked and well settled distinction between a will of personal property and a devise. Personal property is supposed to attend the person, and although in this State, it is presumed to be in the possession of the owner at his domicil for the purpose of devolution, in the event of his death, to those who are entitled to it according to the law of the country of the domicil, this fiction is acted on by the comity of na,-tions, and according to it, a will executed and proved in pursuance to the law of the domicil is held by our courts, when offered for probate here, to be valid, and is admitted to probate, although not executed and proved in the manner required by our law in regard to the will of one domiciled here, our law adopting in respect to it, the law of the domicil.
 
 Alvany
 
 v.
 
 Powell,
 
 2 Jones’ Eq., 51. In regard to real estate, this doctrine, based upon the comity of nations, has no application, and its devolution and transfer must be according to the law of the country where it is situate ; consequently, although a will of the citizen of another State, which contains a bequest
 
 *374
 
 of personal property, and a devise of land situate liere, may be admitted to probate and will be held valid, in regard to the personal property, in accordance to the law of the domicil, yet, in regard to the land, it can only operate as a devise upon proof made before our Courts, that it was executed with the solemnities, and in the manner, required by our law.
 

 In England, the probate of wills of personal property, is made before the ordinary ; if the instrument also contains a devise of'real estate, such probate before the ordinary has no effect in regard to the devise, and the execution of the instrument as a devise, must be proved before a j ury, upon an issue involving the question of title, in the same way as the execution of a deed, or other conveyance of land is proved.
 

 By the Act of
 
 1777, Eev. Stat. ch. 122, sec. 4, the Court of Pleas and Quarter Sessions are empowered to take the probate of wills in respect to personal property.
 
 By the Act of
 
 1784, Eev. Stat. ch. 122, sec. 9, it is provided, “all probates of wills in the County Courts shall be sufficient testimony for the devise of real estate, &c.,” with a proviso for the production of the original wil-1, upon the suggestion of any fraud in obtaining its execution, &c., before the Court, where any suit is depending, &c., in reference to the land. By the Act of 1835, Eev. Stat. ch. 122, sec. 7, it is provided, where a will has been made out of the State, disposing of land situate within the State, the court of pleas and quarter sessions, before which the will is offered for probate, may issue commissions and take the examination of witnesses touching its execution, &c.: Under this Act it was necessary to have the original will before the Court. Where the will, executed in another State, or country, contained bequests and devises of personal and real estate, situate there, and also bequests and devises of real estate situate here, it was found inconvenient, and oftentimes impossible to produce the original paper before our Courts; in consequence thereof, it is provided by the
 
 Act of
 
 1844, ch. 83, sec. 6, “ where any will made by a citizen of any other State, or country, shall have been, or shall be, duly proven in such State or country, according to the laws thereof,
 
 a copy of such will
 
 duly
 
 *375
 
 certified, &c., when exhibited before the Court of Pleas and Quarter Sessions, shall be by such Court allowed, filed -and recorded, &c.” “Provided, that when such will contains any devise of land, situate in this State, such devise shall not liave any validity, or operation, unless said will shall have been executed according to the law of this State, and the Court in which the same may be exhibited, shall have power to issue commissions for taking proof touching the execution thereof, to make up an issue, &c., and to take all other proceedings according to law, and the course of the Court in like cases.”
 

 Thus, it is seen, that a devise of land situate in this State, can have río
 
 validity or operrcubion,
 
 unless it be executed and proven by the oath of witnesses, before the proper court in this State; a probate in the court of any other State or country, to the contrary notwithstanding; to this end, the Act of 1835 authorises the court to issue commissions to take the depositions of witnesses; and the Act of 1844 allows a certified copy, in certain cases, to be_ exhibited for probate in place of the original.
 

 It follows that the paper, purporting to be a copy of the supposed will of David Myers, ought not to have been received as evidence.
 

 ¥e have discussed the several grounds upon which the objection to the admissibility of the evidence is based, the more fully, because the subject has not been heretofore presented for the consideration of this Court. In
 
 Ward
 
 v. Hearne, Busb. Rep. 184, the Acts of 1784 and 1835 and of 1844 are examined and discussed, but it was not necessary to notice the distinction between the provisions, in regard to the probate of wills respecting personal property, and wills containing devises of land.
 

 The plaintiff’s counsel insisted that a certified copy of the will could be read, independently of any action of- the county courts, under the provisions of the Act of 1802, ch. 44, sec. 8. It is sufficient to say the paper was not offered for probate in the courts of this State, until after the passage of the Act of 1844: and if the Act of 1802 admits of the broad construe
 
 *376
 
 tion contended for, it is superseded and repealed by the Act of 1844, so far as the two Acts make provision for the same case and coyer the same ground.
 

 "We are not however to be understood as assenting to the proposition that the Act of 1802 had this broad meaning, and sweeping operation. If a deed executed by a citizen of South Carolina contains a tract of land situated in this State, and also a tract situated in that State, and the deed is admitted to probate, recorded, registered, or enrolled there, according to law, such action is only
 
 quoad
 
 the tract situate in that State, and before it can be read in evidence here, it must be proven and registered in the manner prescribed in our own Act of 1776: So if a will executed by a citizen of South Carolina disposes of personal property there, and also contains a devise of land in this State, although under the act of 1802, the probate before an ordinary there, will be considered sufficient here, in respect to personal estate,
 
 Knight
 
 v.
 
 Wall, 2
 
 Dev. and Bat. 125, yet it will not be considered.as having been proven there quoad
 
 the land situate
 
 here, and -it cannot operate as a devise of the land situate here, until it is proven in the manner prescribed by our Statutes ; or is proven before the County Court, or before a jury trying an issue involving the question of title as at common law.
 

 Plaintiff’s, counsel also insisted that as adverse possession was held by Mrs. Myers for more than seven years, the will, if not proven so as to give it operation as a devise, would be color of title. The objection is to the
 
 competency
 
 of the evidence ; and it is the plaintiff’s misfortune not to be able to prove the execution of the supposed will. In the absence of such proof, the existence of a will cannot be assumed for the purpose of making it color of title, or for any other purpose. The fact not being proved, does not exist according to the maxim
 
 de non appa/rentibios et de non emstentibus eadem est ratio
 
 so the point as a color of title is not presented.
 

 Owing to the manner in which the case, sent to this Court, is stated by his Honor, we had some difficulty in deciding whether the effect of the error is to entitle the defendant to a
 
 *377
 

 venire de novo,
 
 which is the usual result of a successful objection to the ruling of the Court below, or to give him a right to ask for a judgment of non-suit, so as to entitle him to recover his costs, and go -without day. The latter position is put on the ground of a special agreement to this effect. Ilis Honor says, “ by agreement, the several questions were reserved, with leave to the Court to set aside the verdict, and enter a
 
 non-suit,
 
 if, in point of law, the evidence was incompetent.” The meaning seems to be, that a non-suit should.be entered, if the Judge should afterwards come to the conclusion that the evidence was incompetent. Ilis Honor refused to set aside the verdict and enter a non-suit, in other words, he held that the evidence was competent; for this the defendant excepts. Ue are to presume that the object of the agreement was to put the parties in the same condition as if the Judge had, in the progress of the trial, made a decision in accordance to the opinion which he should ultimately arrive at: if so, then we are to take it. as if the Judge had admitted the evidence; to this the defendant excepts, and therefore moves for a
 
 venire de novo.
 
 There is error, and there must be a
 
 venire de novo.
 

 Pee CceiaM. Judgment reversed.